D. H. MUDD ET AL. V. ALBERT WEHMEYER, Presiding Judge, ET AL., and JOSEPH F. MCMAHON, Appellants.—19 S. W. (2d) 891.

Division Two, August 6, 1929.

*Jourdan & English* for appellant, Joseph F. McMahon; *Walter Wehrle* for other appellants.

*Jos. C. McAtee* for respondents.

COOLEY, C.—This case is here on defendants' appeal from the judgment of the Circuit Court of St. Louis County enjoining the collection of and ordering cancelled certain tax bills issued for street improvement in an unincorporated residential section of said county. The work was done and the tax bills were issued pursuant to Sections 10708-9-10-11, Revised Statutes 1919. Plaintiffs were owners of real estate in blocks 3 and 4 of Darby Hill Place in St. Louis County, fronting on a highway called Edmund Avenue. Defendants are the judges of the county court, the county clerk, county highway engineer and the contractor to whom was awarded the contract for improving a portion of said highway. Plaintiffs sued to enjoin the letting of the contract, the doing of the work and the issuance of tax bills therefor and in the petition on which the case was tried, evidently an amended petition, they also prayed for cancellation of the tax bills which apparently had been issued at that time. Defendants, other than the contractor, joined in an answer in the nature of a general denial, and the contractor filed a separate answer, also a general denial.

708

The court's judgment enjoins the county court judges from letting the contract referred to and from levying the special assessment to pay for the work, enjoins the clerk from issuing the tax bills and adjudges the tax bills void and directs cancellation of the same. But from allegations in the petition on which the case was tried and from the agreed statements of facts, and in view of the provisions of Section 10710, supra, that tax bills are to be issued only on completion of the work, we conclude that at the time of the trial the work had been done and the tax bills therefor issued, so that for practical purposes the suit had resolved itself into an action to cancel the tax bills and the judgment may be treated accordingly.

It is unnecessary to set out or summarize the petition as the issues to be determined will sufficiently appear from the agreed statement of facts upon which the case was submitted and determined below. From this agreed statement the facts appear as follows:

1. Plaintiffs are property owners owning property in "lots" (blocks?) 3 and 4, Darby Hill Place, fronting on Edmund Avenue from its intersection with St. Louis Avenue northward a distance of one block, and all of the plaintiffs except seven named "are resident property owners owning property fronting and abutting upon said Edmund Avenue between the points mentioned."

2. That defendants Wehmeyer, Gardner and Rott are and were at all times mentioned judges of the county court, defendant Miller is and was county clerk, defendant Jablonsky county highway engineer, and defendant McMahon the contractor to whom was awarded the contract and who has furnished the labor and materials and performed the contract for the improvement and to whom special tax bills for the cost thereof have been issued "against the property fronting upon the said portion of Edmund Avenue so paved."

3. That the contract was awarded to McMahon on October 3, 1927, by an order of the county court after a petition had been filed with the court signed by a majority of the property owners resident on said Edmund Avenue from its intersection with St. Louis Avenue northward a distance of one block; that Edmund Avenue is three blocks long, running from St. Louis Avenue north to Greer Avenue, and only one block thereof, viz., from St. Louis Avenue northward a distance of one block, was mentioned in the petition and ordered improved, "but there are four owners of property who reside on and own property fronting on that part of Edmund Avenue in the two blocks north of that which was ordered to be improved and no special tax bills have been issued against property of said four owners."

4. All steps required by Sections 10708, 10709, 10710 and 10711, Revised Statutes 1919, were duly taken by the county court, except

that plaintiffs contend that as a matter of law the owners of property who reside on the two northerly blocks of Edmund Avenue, not improved, should be counted in determining whether the petition was signed by a majority of the owners resident on such highway and liable to taxation therefor, while defendants contend that as a matter of law only the owners of property on said Edmund Avenue from its intersection with St. Louis Avenue northward a distance of one block (the part improved) should be counted in determining that question.

5. There was no change of grade made in the roadway of Edmund Avenue on the part improved.

6. The street improved is in a resident district in the County of St. Louis, Missouri, having a population of more than 75,000 inhabitants.

Plaintiffs in the court below challenged the constitutionality of the statutes above referred to under which the improvement was made, on several grounds. The ground chiefly relied upon and the only one seriously urged in this court is that the statutes in question do not provide for notice or process to interested parties nor for a hearing, and are therefore repugnant to the Fifth and Fourteenth Amendments to the Constitution of the United States, and to Section 30, Article II, of the Constitution of Missouri, forbidding the taking of property without due process of law. It was upon this ground that the circuit court held the statutes unconstitutional and the tax bills therefore void, as is shown by a memorandum filed with the court's ruling upon defendants' demurrer.

So far as is necessary to be considered in determining the legal questions presented in the case, the statutory provisions involved are as follows: Section 10708 empowers the county courts in counties of 75,000 or more inhabitants to provide for and require the building of sidewalks and roadways along any street, avenue, road or highway in any unincorporated village or residential district in the county by and at the expense of the owners of lots fronting on such street, etc., along the distance improved in proportion to the front feet, whenever a petition therefor shall be filed with the court, signed by a majority of the owners resident on such street, avenue, etc., and liable to taxation therefor. Section 10709 provides for the letting of contracts for such work to the lowest and best bidder, after publication of notice for bids, as therein specified. Section 10710 provides that the cost of the work shall be apportioned and assessed by the county court against the abutting property on the basis per front foot ascertained by dividing the cost of the work by the total frontage of the abutting property, the assessments to be known as special assessments, and special tax bills to be issued therefor upon com-

pletion and acceptance of the work, which tax bills shall be liens against the lots therein respectively described until paid. Section 10711 provides that such tax bills shall be assignable and collectible in the name of the county to the use of the holder and shall, in any action thereon, be prima-facie evidence of the regularity of the proceedings, of the validity of the bills, the doing of the work and furnishing of materials charged for and of the liability of the property to the charge stated in the bills.

No provision is made for a remonstrance nor for notice to or a hearing of the property owners before the improvement is ordered other than the petition mentioned in Section 10708.

The statutes in question and the proceedings thereunder do not involve the power of eminent domain nor contemplate a taking of property within the meaning of the constitutional provision forbidding the taking of private property for public use without compensation. It is now too well settled to admit of dispute that special assessments for local improvements such as provided for by these statutes are referable to the taxing power. The function of making or providing for the making of such assessments is legislative in character and the Legislature has power to create special taxing districts and to charge the cost of such improvements upon the property in such districts according to valuation, area or frontage. [Meier v. St. Louis, 180 Mo. 391, 408, 79 S. W. 955, and cases cited: Haeussler Inv. Co. v. Bates, 306 Mo. 392, 267 S. W. 632; Houck v. Little River Drainage Dist., 239 U. S. 254; Barber Asphalt Paving Co. v. French, 158 Mo. 534, 58 S. W. 934, affirmed in French v. Barber Asphalt Paving Co., 181 U. S. 324, in which the principle is recognized and the front foot rule of assessment is sustained.]

While it is recognized by the authorities and would seem undeniable on principle that the property owner is entitled to some form of notice and hearing before the assessment becomes a finality, it is not generally considered necessary in order to conform to the due-process-of-law requirements of the Federal and State constitutions that such notice and opportunity for hearing should precede the making of the assessment, or that a hearing should be accorded upon all matters involved in the assessment. Where the Legislature itself establishes the taxing district, declares what property shall be taxed for the proposed improvement, thereby in effect determining that such property will be benefited, and fixes the amount of the assessment by laying down a definite rule, such as frontage or area, for calculating the amount, so that in determining the sum to be assessed against each parcel of property all that is left to the local assessing body is the mathematical calculation of the amount in

accordance with the rule or standard fixed by the Legislature, it is not necessary as due process of law that the property owner be given notice or opportunity to be heard before the taxing district is created or as to whether or to what extent his property will be benefited. So long as the legislative action is not manifestly arbitrary or fraudulent or amounting in effect to confiscation under the guise of taxation, the courts will not attempt to interfere with the legislative discretion. As said in Haeussler Inv. Co. v. Bates, supra, 306 Mo. l. c. 409-10:

"The Legislature, or other body exercising legislative functions, may ascertain and determine, as a legislative act, the question of benefits accruing to property owners, and the propriety of the establishment of a taxing district for a public improvement. That determination of the Legislature is conclusive; no notice or hearing is necessary in order that the property may be burdened with the cost of the improvement."

For support of these views see Nichols v. Kansas City, 291 Mo. 690, 237 S. W. 107; Naylor v. Harrisonville, 207 Mo. 341, 105 S. W. 1074, and cases cited; Mullins v. St. Mary's Cemetery Assn., 268 Mo. 691, 702, 187 S. W. 1169; Meier v. St. Louis, supra; Weaver v. Templin, Trustee, 113 Ind. 298, 1 N. E. 600; Roberts v. Smith, 115 Mich. 5, 72 N. W. 1091; Withnell v. Ruecking Constr. Co., 249 U. S. 63, and cases cited; Valley Farms v. Westchester County, 261 U. S. 155, and cases cited; 1 Page & Jones on Taxation by Assessment, secs. 123, 125, 553; 2 Elliott on Roads & Streets (4 Ed.) sec. 699; cases collected in Note III to State v. Several Parcels of Land (Neb.). L. R. A. 1916E p. 12.

The rule or principle above mentioned does not mean, however that a property owner whose property is thus taxed for a public improvement is not entitled to his day in court. While he is precluded so far as concerns the establishment of the taxing district and the fact and extent of benefits to his property included therein by the legislative determination of those matters, assuming that such legislative action is not manifestly arbitrary or capricious, of which there is no suggestion here, there are matters which he may contest. The facts upon which the county court is given power to order the improvement must exist and the statutory requirements as to the doing of the work and the assessment of the tax must be followed. If such facts did not exist or such statutory requirements were not observed the assessment would be invalid. At some time before the charge upon his property becomes final and conclusive the property owner is entitled as of constitutional right to notice and an opportunity to be heard regarding matters other than those of which the legislative action is conclusive.

Respondents insist that in order to conform to the due process of law provisions of the Federal and State constitutions such notice and opportunity for hearing must precede the ordering and doing of the work. Appellants contend that these constitutional requirements are satisfied when the tax in question is collectible or enforcible only by a suit or judicial proceeding in which the property owner must be served with process and may assert any defense that would show the assessment invalid. We agree with appellants' contention. This question has been so determined by both the United States Supreme Court and by this court.

It is conceded of course that while the statute declares the tax bills a lien on the property such lien can be enforced and the bills collected only by an action in court. [Bates v. Comstock Realty Co., 306 Mo. 312, 267 S. W. 641.] In such action the property owner may assert any defense tending to show the charge upon his property to be invalid. Respondents concede in their brief that all the facts pleaded by them as grounds for injunction and for cancellation of the tax bills can be asserted by them in defense of an action to enforce the bills. The fact that the tax bills are by statute made prima-facie evidence of the regularity of the proceedings and of the liability of the property to the charge imposed does not affect the constitutional question under consideration. [1 Page & Jones on Taxation by Assessment, sec. 138.]

In Davidson v. New Orleans, 96 U. S. 97, where the assessment had been levied without previous notice to the property owner, the court said:

"Whenever by the laws of a State, or by State authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections."

Hagar v. Reclamation District, 111 U. S. 701, announces the same rule and holds that if objections to the validity or amount of the assessment may be taken when the attempt is made to enforce it, all the opportunity is given to the taxpayer to be heard respecting the assessment which can be deemed essential to render the proceeding due process of law.

Bauman v. Ross, 167 U. S. 548, cited by respondent, deals chiefly with matters referable to the power of eminent domain which in-

volves different principles. For discussion of the reasons why due process of law does not require the same formality where the taking of property is in the enforcement of a tax as where the title or possession is involved, see Hagar v. Reclamation District, supra. Regarding the assessment feature, however, the Bauman case cites with approval Davidson v. New Orleans, supra.

The same conclusion has been announced by this court in several cases. Saxton Natl. Bank v. Carswell, 126 Mo. 436, 29 S. W. 279, was a suit on a special tax bill for street improvement in St. Joseph. It appears from the opinion that the city charter made no provision for notice to or hearing of owners of property to be assessed for the cost of the work prior to the assessment. The tax bills were by statute made liens on the property and prima-facie evidence of their validity and were enforcible by suit, as in the instant case. There, as here, the contention was made that the charter provisions were unconstitutional for that there was no provision made for notice to property owners and a hearing before the work was done and the assessment made. The court said that the controversy narrowed down to the one proposition that a hearing in the suit to enforce the tax bills was not sufficient. It was held that such hearing was sufficient and that the statute was constitutional, citing Davidson v. New Orleans, and Hagar v. Reclamation District, supra, and City of Kansas v. Huling, 87 Mo. 203, and St. Louis v. Richeson, 76 Mo. 470. The two Missouri cases as well as the Davidson and Hagar cases support the decision. St. Louis v. Richeson, supra, was overruled in part, but not on this point, in St. Louis v. Ranken, 96 Mo. 497, 9 S. W. 910. The Saxton case is cited with approval in City of Springfield to Use v. Weaver, 137 Mo. 650, 672, 37 S. W. 509, 39 S. W. 276. See also Embree v. Road Dist., 257 Mo. 593, 610-13, 166 S. W. 282, announcing the same rule and approving the cases cited above in support thereof. [Embree v. Road District, 240 U. S. 242; 1 Page & Jones on Taxation by Assessment, sec. 733; notes to State v. Several Parcels of Land, L. R. A. 1916E, par. XIV, pp. 52 et seq.]

Respondents cite several Missouri cases as sustaining their contention that due process requires notice and opportunity to be heard. None of the cases cited, nor any that we have found, disagree with the authorities hereinabove referred to holding that notice is not required as to those matters which the Legislature has legitimately determined, and that as to matters which the property owner may contest the right to be heard in an action to enforce the tax bill satisfies the requirement of due process. Of course, when the Legislature, in delegating to a municipal body the authority to cause improvements to be made at the expense of property owners, provides

that certain precedent steps shall be taken, such conditions must be complied with. The statute may provide that the local body may proceed only after a petition of property owners is presented. It may require the giving of notice by publication or otherwise before the improvements can be made. But the fact that the giving of such notice when thus required constitutes due process of law does not mean that the due process requirement would not be satisfied without such provision for precedent notice, provided the property owner has his day in court at some later stage of the proceedings and before the charge upon his property becomes final and conclusive.

In Cornet v. St. Louis County, 240 S. W. 107, one of the cases most strongly relied on by respondents, the proceeding was dual, involving both the appropriation of property and the assessment of a tax to provide for payment for the property taken. It was held that in the condemnation branch of the case the court acted judicially and could proceed only upon such judicial notice to the owner as would satisfy the requirements of due process of law in other judicial proceedings *in rem,* which required that the owner be given an opportunity to be heard. But, as clearly shown in the opinion, what is there said concerning the necessity of such notice applied to the condemnation branch of the case only. It is clearly pointed out that in the assessment or taxing feature of the proceedings the action was not judicial. So far as it deals at all with the question of notice in assessment proceedings the decision is in harmony with the authorities herein above cited. Norwood v. Baker, 172 U. S. 269, also involved the dual features of condemnation and taxation. As shown by later decisions of the same court, what was actually held in the Norwood case is not out of harmony with the holdings in the other decisions of the United States courts above cited. Other cases cited hold that the preliminary notice therein required constituted due process of law, but, as stated above, that does not amount to a holding that the right to be heard in defense of a suit on the tax bills would not be due process.

It is contended that the county court acted judicially in finding the facts upon which depended its right to proceed with the improvement, such as that the street improved is a public highway and in  a residence district, that the petition was signed by a majority of the resident property owners, etc. Respondents cite Haeussler Inv. Co. v. Bates, supra, from which they quote in support of that contention as follows:

"Further, it may be said that generally the Legislature cannot delegate its purely legislative functions. It may confer upon certain officers, boards, commissions or courts to carry out the legislative

will by ascertaining facts upon which the operation of the legislative act would depend, or for the purpose of putting into force legislative acts in certain limited districts. These are not strictly legislative powers, delegated by the Legislature, but administrative, requiring the exercise of no discretion."

It is obvious that there is nothing in the language quoted to justify the contention that the county court acted in a judicial capacity. The ascertainment of such facts must of necessity be committed to the municipal body or board to which is given authority to cause the improvement to be made. Otherwise, it would be practically impossible to make such local improvements. In ascertaining such facts such boards or municipal bodies cannot be regarded as exercising judicial functions. The determination thereof by the county court does not preclude the property owner from asserting the non-existence of such facts when sued on the tax bill. The determination of the question as to what property will be benefited by a public improvement may be delegated by the Legislature to municipal authorities empowered to determine the district in which property will be benefited and the amount of the benefit and to fix a standard for its apportionment therein. In such case, as said in City of St. Louis v. Ranken, supra, "when a tax is to be assessed in proportion to benefits, the apportionment is a quasi-judicial proceeding in which, at some stage, the owner has the right to be heard upon the question of the amount to be assessed against his property, before a charge therefor finally attaches thereto . . ." We are not dealing with such situation in this case.

The suggestion is made by respondents that the statute is discriminatory and denies them the equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution, because in other localities and cities notice is required, citing Duncan v. Missouri, 152 U. S. 377. The case cited has no application and does not sustain the contention.

It is suggested that only property owners resident on the portion of the street improved are eligible to petition for the improvement. The Legislature might have authorized the county court to proceed without any petition. The assessment when made operates alike upon all property owners whether resident or non-resident. The statute is not repugnant to the constitutional provision invoked. [Buchan v. Broadwell, 88 Mo. 31, and cases cited therein; Bank v. Clark, 252 Mo. 20, 30, 158 S. W. 597; Field v. Barber Asphalt Paving Co., 194 U. S. 618; Stone v. City of Jefferson, 317 Mo. 1, 6, 293 S. W. 780.]

716

Other objections made in plaintiffs' petition to the validity of the statutes are not briefed and appear to have been abandoned.

Respondents' contention that "the owners of property who reside on the two northerly blocks of Edmund Avenue" (not improved) should have been counted in determining the sufficiency of the petition, is not quite clear. In paragraph 2 of the agreed statement of facts, it is stated that tax bills have been issued against "the property fronting upon said portion of Edmund Avenue so paved." That can only mean *all* of the property so situated. It is admitted that the petition was signed by a majority of the property owners resident on the part of the street improved. We take it therefore that the statement in paragraph 3 of the statement of facts that "there are four owners of property who reside on and own property fronting on that part of Edmund Avenue in the two blocks north of that which was ordered to be improved and no tax bills have been issued against property of said four owners," must mean that their only property fronting on the street is in the two northerly blocks that were not improved; in which case obviously they were not to be counted in determining the sufficiency of the petition and naturally their property, not being in the taxing district, was not taxed. In any event, the tax bills being prima-facie evidence of the regularity of the proceedings and of their own validity, the burden was upon plaintiffs to show noncompliance with the statutes, which they have not done.

We hold that the sections of the statute involved are valid; and since admittedly the improvement was made and the tax bills were issued in conformity therewith, it follows that the tax bills are valid. The judgment of the circuit court should be reversed. It is so ordered. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.