# E. E. NAYLOR et al. v. CITY OF HARRISONVILLE et al., Appellants.

### Division One, November 27, 1907.

1. **BENEFIT ASSESSMENT: Sidewalk:. Private Way.** If the street or alley is private property belonging to the adjoining property-owner, and not a public street or alley, the city has no power, under the provision of the Constitution saying "that private property shall not be taken or damaged for public use without just compensation," to tax it with the cost of a sidewalk.

2. ————: ————: **Alley.** The fact that the witnesses and counsel designate the narrow street as "alleys" is of no significance in determining whether they are streets or alleys,

3. ————: **Public Street or Alley.** The recorded plat shows·that the land on which the city is built was laid out into squares, numbered 1 to 236, averaging in size two hundred feet square; that these squares face in four directions upon strips of ground, unnamed either streets or alleys, varying in width, but the marginal notes refer to the squares as blocks, and to the strips as streets; and that there are twelve strips running north and south and the same number east and west, and two in each direction through the center of the. town are forty feet wide, while all other· strips are fifteen feet wide. All the squares had been sold according to the plat, as facing on the strips, and residences have been built thereon. Many years ago the city took charge of the strips and improved them as streets, and on one of these fifteen-foot strips in front of the squares owned by plaintiffs there has been for over twenty years a board sidewalk. The public school building is on a square one block south of plaintiffs' property, and there is no other way for school children to reach the school, or for the public generally to reach their homes and various portions of the city, except by traveling over the strips indicated on the plat, and they have been so used ever since the plat was filed. The plat does not appear to have been signed or acknowledged by any one, ·but in the upper right hand corner are the words: "Western Boundary of Cummins & Simm's Addition to the City of Harrisonville." *Held*, that, *first*, that the intention of the owner, whoever he was, was to dedicate the strips to public use, is manifest by the reference to them as streets in the marginal notes, by filing the plat for record, and by then selling the blocks of ground according to the plat; *second*,

the fifteen-foot strips were not private alleys, but public streets; and, *third*, being public streets, the city has authority to construct a concrete sidewalk in place of the board sidewalk, and to charge the cost thereof as a benefit assessment against the adjoining property.

4. ————: Alley: Public Street. Whether or not a city of the fourth class has authority to construct sidewalks along its alleys is not for determination if the highway is not an alley but a public street. A city of that class has express authority to construct sidewalks along its public streets.

5. ————: Without a Hearing. The statute which directs the assessment of the costs of a sidewalk against the abutting property, without a hearing as to the benefits thereto, is not unconstitutional.

Appeal from Cass Circuit Court.—*Hon. W. L. Jarrott*, Judge.

REVERSED (*with directions*).

*C. W. Sloan, C. W. Hight* and *John A. Davis* for appellants.

(1) When the officers of a city do some act evidencing an intention to assume jurisdiction or control over a street or public highway, then the obligation of the city arises, and it must keep same in proper and safe condition for travel or respond in damages for injuries sustained thereon. Conner v. Nevada, 188 Mo. 160; Ely v. St. Louis, 181 Mo. 723; Downend v. Kansas City, 156 Mo. 68; Baldwin v. Springfield, 141 Mo. 205; Bachman v. St. Louis, 121 Mo. 536; Johnson v. St. Joseph, 96 Mo. App. 699; O'Malley v. Lexington, 99 Mo. App. 700; Stealey v. Kansas City, 179 Mo. 407, approving O'Malley case, supra. In the case at bar the city had assumed control, both for vehicles and pedestrians; and the actual possession and long use of the public highway or alley in controversy, as shown by the evidence, was sufficient to show a vested right in the city, without any formal dedication at common law. Maus v. Springfield, 101 Mo. 613; Meniers v. St.

Louis, 130 Mo. 284; McGinnis v. St. Louis, 157 Mo. 197; Longworth v. Sedevic, 165 Mo. 221; Railroad v. Railroad, 190 Mo. 253.   (2)   This street is not an "alley," as the term is used to express a narrow way set apart, first, for the use of abutting property, the second, for the use of the public.   Bailey v. Culver, 12 Mo. App. 183; Corby v. Railroad, 150 Mo. 457. (3)   The city had the right and authority to assess the parts set out in petition as the smallest subdivision abutting on the way in controversy.   Sparks v. Clark, 57 Mo. 58; Roth v. Gabbert, 123 Mo. 30; Weaver v. Grant, 39 Iowa 296.   (4)   It is now too late for plaintiffs to urge—as they do in their bill for injunction—that the acts of the Legislature authorizing cities of the fourth class to compel the building of sidewalks is unconstitutional.   The courts have uniformly upheld said acts.   Farrar v. St. Louis, 80 Mo. 379; State ex rel. v. Kansas City, 89 Mo. 34; Estes v. Owens, 90 Mo. 113; Dennison v. Kansas City, 95 Mo. 430; St. Joseph v. Owen, 110 Mo. 445; Clinton to use v. Henry Co., 115 Mo. 565; Moberly v. Hogan, 131 Mo. 23; Morrison v. Morey, 146 Mo. 564; Kansas City v. Bacon, 147 Mo. 282; Barber A. P. Co. v. French, 158 Mo. 538; Meier v. St. Louis, 180 Mo. 408.

*James S. Brierly* and *Allen Glenn* for respondents.

(1)   No power is given to cities to take the streets or alleys or other highways without compensation. Secs. 21 and 30, art. 2, Constitution; Zoeller v. Kellogg, 4 Mo. App. 163; St. Louis v. Hill, 116 Mo. 527; St. Louis v. Dorr, 145 Mo. 466; DeGofrey v. Merchants' Bridge & Ry. Co., 179 Mo. 701; McCormick v. Patchin, 53 Mo. 33; Shively v. Lankford, 174 Mo. 549.   (2) Obstructions preventing the free use of the alley is damaging, as contemplated in Constitution aforesaid. Spencer v. Railroad, 120 Mo. 154; Lockwood v. Railroad, 122 Mo. 86; Lumber Co. v. Railroad, 129 Mo.

455. (3) Streets are held by the public authorities in public trust, primarily for the free and common use of the whole traveling public, and secondarily for the benefit of the owners of abutting property to afford access to their property; while the alleys are held in trust for the special and particular benefit of the property in the block which abuts the alley and are intended to afford rear accesses to said property. Corby v. Railroad, 150 Mo. 468; St. Louis v. Juppier, 16 Mo. App. 557. (4) There is a distinction between a street and its uses, and an alley and its uses, and the right of the abutting owner in each. DeGeofrey v. Railroad, 179 Mo. 698; Brownell v. Fuller, 60 Neb. 558; 2 Am. and Eng. Ency. Law (2 Ed.), 149; 1 Words and Phrases, p. 341; Beeche v. People, 38 Mich. 291; In re Woolery, 95 N. Y. 140; Paul v. Detroit, 32 Mich. 108; Bagley v. People, 43 Mich. 355; Horton v. Williams, 99 Mich. 427; Praigg v. Supply Co., 143 Ind. 358; Winston v. Johnson, 42 Minn. 398; Face v. Iona, 90 Mich. 104; Dodge v. Harte, 113 Iowa 685; Gaynor v. Bauer, 144 Ala. 448; Hickok v. Plattsburg, 41 Barb. 130; Van Whitten v. Gutman, 24 L. R. A. 405; Hunter v. Watson, 111 Mo. 177; Corby v. Railroad, 150 Mo. 468.

WOODSON, J.—This suit was instituted in the circuit court of Cass county by the plaintiffs, seeking to enjoin the defendants from the construction of a concrete sidewalk, four feet in width, along a nameless street, avenue, alley or public highway, on the west side of blocks 220 and 217, in the city of Harrisonville, a city of the fourth class.

There was a trial before the court, and the findings and decree were for plaintiffs, permanently enjoining the defendants from constructing the walk. In due time and in proper manner the defendants appealed the cause to this court.

The facts are few and undisputed, and are as follows:

A copy of a plat bearing the heading, "Plat of the City of Harrisonville," and recorded in the recorder's office of that county, was introduced in evidence, and shows that the land upon which the city is built is laid out into squares, numbered from one to two hundred and thirty-six inclusive, and average in size about two hundred feet square; these squares face in four directions upon open spaces or strips of ground, unnamed, which vary in width, and run north and south and east and west through the entire length and breadth of the city, thereby giving the plat the appearance of a plat of a townsite, laid out into streets and blocks; but there are no statements appearing upon the face of the plat which show that the squares are blocks or that the spaces or strips of ground are streets. There are, however, various marginal notations on the plat explaining the plat, which refer to the squares and spaces as blocks and streets. The witnesses also refer to these squares and spaces as blocks and streets or alleys, and we will hereafter refer to them in the same manner.

There are twelve streets running north and south, and the same number running east and west. The two streets running north and south and the two running east and west through the center of the city are forty feet in width, while all the balance of them are only fifteen feet wide. The record discloses the names of but five or six streets in the entire city.

The witnesses refer to the four broad streets as "streets" in contradistinction to the narrow ones, which they call "alleys;" but the plat shows no alley running through any of the blocks in the entire city.

The pleadings and oral testimony also show that comparatively all of the blocks which appear upon the plat have been subdivided into lots, and have been

sold to various persons, who have constructed houses and made other improvements thereon, and that they occupy them as homes, and use all the streets in the ordinary manner in going to and departing from their homes; and the record discloses no other means of access thereto.

The exact time when this plat was filed does not definitely appear, but it was sometime between the years 1869 and 1880. These streets have been constantly used by the public as streets ever since the plat was filed; and the street proposed to be improved, and for the prevention of which this suit was brought, was accepted by the city on or before the year 1880, and it had a board sidewalk laid along same and in front of blocks 217 and 220, the property of plaintiff. That walk is still there and has been used by the public ever since its construction. The walk now proposed to be constructed is to replace that old board walk.

The public school is located near the southeast corner of the city, and one block south of the south end of the property of plaintiff. There is no way for the school children to reach the school and for the public generally to reach their homes and the various portions of the city except by traveling over the streets indicated upon the plat.

I. The respondents resist the construction of the sidewalk in question upon three grounds, as follows:

*First.* They contend that all of the fifteen feet, or narrow streets in the city, which includes the one upon which the walk in question is proposed to be constructed, are alleys and not streets belonging to the public, but are private ways belonging to the adjacent property-owners, and cannot be taken or damaged for public use without just compensation first having been paid therefor.

*Second.* That under the charter of cities of the fourth class, Harrisonville has no power or authority

to have sidewalks constructed along an alley of the city.

*Third.* That the city has no authority to make such improvements and assess the costs thereof against the abutting property without first giving the property-owners a hearing, and after it is ascertained that the property would be benefited by the improvements.

We will dispose of the legal propositions thus presented in the order mentioned.

Section 21 of article 2 of the Constitution of 1875 provides "that private property shall not be taken or damaged for public use without just compensation."

Under this provision of the Constitution it cannot be gainsaid that if the street or alley in question is not a public street or alley, but is private property belonging to the adjoining property-owners, then the city has no power to take or damage the same without first paying just compensation therefor; but if, upon the other hand, it is a public street belonging to the city, then the power of the city to have it improved, we presume, will not be questioned. So, this brings us to the vital question presented by this record, and that is, is the street which is proposed to be improved public or private property?

We might observe in the first place that the mere fact that most of the witnesses and counsel have referred to the narrow streets appearing upon the plat as "alleys," has but little or no significance in the determination of the character of the strip of ground upon which the sidewalk is proposed to be laid. This is one of the cases where "there is nothing in a name; a rose by any other name would smell as sweet."

Coming directly to the question in hand. It should be observed that the plat of Harrisonville introduced in evidence in no manner indicates that the narrow streets appearing thereon are alleys, nor that the broad

ones are streets. It is perfectly silent upon those matters, except some marginal notes which will be later mentioned. The four broad streets appearing thereon are indicated to be forty feet in width by the figures "40" printed at each end thereof, while the width of all the rest is indicated by the figures "15" also printed at each end thereof.

The plat also shows that all of the blocks appearing thereon have their four sides facing upon these streets, and that none of them run through or bisect any of the blocks. The blocks of ground numbered in the plat were sold to various persons, according to the plat, as facing upon these streets, and they have been built upon and otherwise improved as residence and business property by the purchasers.

The evidence shows that many years ago the city took charge of these streets and improved many of them, the one in question being among the number, and threw them open to the traveling public. Besides this, the plat and the oral testimony in the case conclusively show that there is no other way or means by which the property-owners and the public generally can obtain access to and from their homes and properties and from one portion of the city to another, except by passing over these streets; and the evidence is equally conclusive that they have been so used by the public ever since the plat was filed, more than twenty-seven years ago, and, judging from some of the statements of some of the witnesses, it appears to have been sixty or seventy years ago. This plat, however, does not appear to have ever been signed or acknowledged by any one, but the following words appear on the margin thereof, in the upper right-hand corner, "Western Boundary of Cummins & Simm's Addition to the City of Harrisonville."

This court has held that "any act by the owner of property setting apart to the public a portion of

his property, clearly showing that such was his inten-
tion, vests the use of such property in the public for
the purposes indicated; and if actually thrown open,
the public may take possession. The usual course is
to make a plan of a town or of an addition, setting
apart streets, alleys, public squares, etc., and file a
plat thereof with the recorder. [Rose v. St. Charles,
49 Mo. 1. c. 511.]

In the case just cited there was no plat filed but
an unrecorded contract was shown between a former
owner and purchasers of contiguous property, to dedi-
cate certain streets of which the city had taken posses-
sion. This court there held that the dedication was
complete.

In the case of Heitz v. St. Louis, 110 Mo. 618, the
owner of the land failed to acknowledge the plat as
required by the statute prior to filing it for record.
This plat, however, showed upon its face that the land
had been subdivided into lots and blocks, and streets
and alleys; and thereafter the owner sold the lots ac-
cording to the plat as filed for record. Subsequently,
the original owner of the platted land quitclaimed all
of his right, title and interest to certain of the streets
named in the plat to the plaintiff, and he took posses-
sion of them and proceeded to close them up. The city
of St. Louis interfered and plaintiff brought an injunc-
tion suit against the city to restrain it from interfering
with his possession of the streets. His contention was
that because the plat was not properly acknowledged,
there was no dedication of the streets to the city or
to the public.

In that case this court held that the principal
matter to be determined in an incomplete or defective
dedication is the intention to dedicate the streets to
the public, and that where that is clearly manifested
the dedication is a complete common law dedication.
That case also held that accepting, improving and us-

ing one or more of the streets so platted must be regarded as an acceptance of the whole tract platted and not merely such portion as it improved. And that the rights acquired by purchasers under a common law dedication inure not only to their benefit but the benefit of all who have occasion to use the streets laid down in the plat, and the sale of lots according to the plat carries with it the covenant that the streets shall forever remain open to the public use.

And in the case of the City of Hannibal v. Draper, 15 Mo. 635, one Glascock filed in the office of the recorder of deeds a duly acknowledged plat of the town of Hannibal. Among other memoranda on the map was the following: "Lots numbered 2, 3, 4 in block 26 is intended for church grounds;" and across the lots were written the words "church grounds." This court held in that case that the dedication was sufficient to vest the fee in the county for public use.

Now, do the facts of the case at bar bring it within the operation of the doctrine announced in the foregoing cases? We believe they do.

Some years ago some one filed an unsigned and unacknowledged "Plat of the City of Harrisonville" in the recorder's office of Cass county, by which he subdivided a certain tract of land into what the marginal entries and the witnesses in the case refer to and denominate streets and blocks; that those blocks fronted upon the streets and were sold to various parties according to the plat on file; that the city took possession of the streets, threw them open for public use, and improved some of them, including the one upon which the sidewalk is proposed to be constructed; that they are the only means of access to the various blocks, and they have been used by the public as streets ever since the plat was placed of record.

The intention of the owner of the property to dedicate the streets to public use is manifested by

referring to them as streets in the marginal notes of the plat, by filing the plat for record, and then selling the blocks of ground fronting on the streets according to the numbers appearing upon the plat. This intention is made more clear by the fact that there were no other means or way by which the property could be reached.

In pursuance to these acts of the owner of the platted ground, and with no objection from him or any of the property-owners, the city took possession of the streets, improved them and opened them up for public use, and the public have been using them as public streets ever since.

Every fact and circumstance in the case from the beginning to the end refutes the proposition that the strip of ground upon which the walk is proposed to be constructed is a private alley; and upon the other hand they point with an unerring finger to the intention of the owner of the ground to dedicate the streets to the city for public use. Not only this, they are not located as alleys are; they do not run through the blocks of ground and in the rear of houses and property as alleys generally do, but they are located in front thereof, just as all streets are, with the four fronts of all of the blocks fronting on them.

None of the streets mentioned in this case were intended to perform the purposes of an alley, and have never been used for such purposes.

The different purposes for which streets and alleys are established and used are clearly pointed out by this court in the case of Corby v. Railroad, 150 Mo. l. c. 468, where it is held that streets are held by the city in trust, primarily for the free and common use of the whole traveling public, and secondarily for the benefit of the owners of abutting property to afford access to their property; while the alleys are held in

trust for the special and particular benefit of the property in the block which abuts the alley and are intended to *afford rear accesses to said property.*

According to the doctrine announced in the Corby case, these streets are public ways, because they were opened up by the city and improved for public use, and have been used by the public as such for many years, and not simply by the property-owners which abut upon them.

We know of no city in this country but what has streets and most of them have alleys, but this is the first time we have ever heard of one having alleys in four-fifths of it, with no streets, and the other fifth having streets but no alleys. There is no evidence in this case which would justify any court in reaching any such conclusion, but, upon the other hand, we think the evidence clearly shows that the strips of ground called alleys by witnesses and counsel for respondents are nothing more nor less than public streets, held and owned by the city of Harrisonville for the public use.

We must, therefore, hold against respondents on the first proposition presented, for the reason that they do not own the street in question, nor is their property being taken or damaged for public use within the meaning of the Constitution.

II. The second proposition presented for our consideration is that the city of Harrisonville has no authority under its charter to construct sidewalks along the alleys of the city.

Under the conclusions reached by us in paragraph one of this opinion, the so-called alley, along which the city proposed to construct the sidewalk, is not, in fact, an alley, but is a public street. The question presented, therefore, is not properly before us, and for that reason we decline to express any opinion upon the proposition.

. It is sufficient to state that sections 5979 and 5981, in express terms, grant to cities of the fourth class the power to construct and repair sidewalks along the streets, alleys, avenues and public highways within the city limits.

III. The last proposition contended for by respondents and upon which they ask an affirmance of the judgment is, that section 5981, Revised Statutes 1899, which directs the assessment of the costs of constructing the sidewalk against the abutting property fronting upon the improved street, without a hearing as to the benefits thereto, is in violation of section 30 of article 2 of the Constitution of 1875, and is therefore null and void. Said section provides "that no person shall be deprived of life, liberty or property without due process of law."

This is no longer an open or a debatable question in this State, nor in the United States. There is an unbroken line of decisions of this court, extending from the case of Lockwood v. St. Louis, 24 Mo. 21, down to the case of Ross v. Gates, 183 Mo. 1. c. 346, 347, holding such statutes are valid, and are not violative of the constitutional provisions before mentioned, nor of the 14th Amendment of the Constitution of the United States. The Supreme Court of the United States has also held the same way and put at rest that question in that court. [French v. Barber Asphalt Paving Co., 181 U. S. 324; Eyerman v. Blaksley, 78 Mo. 149; Springfield to use v. Weaver, 137 Mo. 1. c. 672; Meier v. St. Louis, 180 Mo. 391.]

It must, therefore, follow from what has been said that the decree of the circuit court enjoining the city of Harrisonville from constructing the sidewalk in question must be reversed, with directions to that court to dismiss plaintiffs' bill; and it is so ordered.

All concur.